WILLIAM E. CROSBY, PLAINTIFF-RESPONDENT, v. THE CITY OF EAST ORANGE, DEFENDANT-APPELLANT.

Submitted March 6, 1913—Decided July 2, 1913.

Plaintiff brought suit to recover damages which he claimed defendant caused by abstracting subterranean water from his land. A witness was allowed, in answer to a hypothetical question, to give an opinion as to the difference between the rentable and usable value of plaintiff's land with the water-supply in its normal condition and with such water-supply as remained after defendant had abstracted a considerable portion. It appeared that the witness, as agent, had negotiated the leasing of one or two properties located in the neighborhood of plaintiff's farm, and that on one occasion the proposed tenant had given preference to a farm with a water-supply over one without it. *Held*, that this did not qualify the witness to give an expert opinion as to the difference in the rental value of plaintiff's property under the respective conditions assumed in the hypothetical question.

On appeal from the Supreme Court.

For the respondent, *Lum, Tamblyn & Colyer*.

For the appellant, *Jerome D. Gedney* and *Edward M. Colie*.

The opinion of the court was delivered by

BERGEN, J. The plaintiff is the owner of a tract of land on which there are two wells of water and through which flows a small stream called Bear brook. The defendant, owning property in the vicinity of plaintiff's land, caused wells to be sunk, from which it pumped subterranean water and disposed of it for commercial purposes. The plaintiff claiming the abstraction of such water deprived his land of flowing and subterranean water to such an extent that the diminution in quantity of the natural supply thereof so affected his land as to cause a serious injury to him, brought his action and obtained a judgment, from which defendant appeals. The errors which, in our opinion, require a reversal of this judg-

ment relate to rulings on the admission of testimony, the first of which is the opinion testimony by one not properly qualified.

The plaintiff called as a witness Edna Dickinson, and she was asked the following question: "*Q.* Now, will you give us your best judgment as to the difference in rentable or usable value per year of the Crosby property, assuming on the one hand that there was an abundant supply of water in what is known as the shop well, and also in what is known as the house well, and that Bear brook flowed with a fair supply of water, except for a short time in very dry seasons; and on the other hand assuming that there is no water in the house well, and no water in the shop well, at various times in each year, and that Bear brook, the brook adjoining the property, or going through it, goes dry, or practically dry, early in the season, and stays dry several months?"

This hypothetical question assumes that the facts therein stated had been proven, an assumption not now necessary to question, and manifestly called for an opinion based upon the assumed facts. This question was objected to because, among other reasons, the witness was not qualified to give an opinion as to the difference in rental value of plaintiff's property under the different conditions assumed in the question.

The trial court overruled the objection and permitted the witness to answer the question. Her qualifications to give this opinion were, that she was twenty-four years of age, and had been engaged in the real estate business, that is selling and renting property, for about two years; that land rented more readily when it was supplied with water, and on one occasion when a proposed lessee, in deciding which of two properties he would lease, one without a water-supply and one with, selected the property which had water on it. There is nothing in this to indicate that the witness had any special knowledge concerning the difference in rentable, or usable, value between property with a supply of water, such as it was assumed the Crosby property would have, except for the alleged abstraction of water therefrom by the defendant, and one where there was none after such abstraction.

That the witness was a real estate agent and had sold, as such agent, lands in the neighborhood, would probably qualify her to give an opinion as to the value of this particular farm, but the mere fact that on one occasion she was able to lease a farm having a water-supply, in preference to one which had not, affords no basis for an opinion concerning the difference in rental value between the two, for it may have been, in the case given, that there were other inducements which disposed the proposed tenant to accept one rather than the other. Nor does it appear that she had ever had occasion to know, or make any comparison between the rental value of properties supplied with water, and those not so supplied, and without a special knowledge of the subject-matter she was not qualified to give her opinion concerning it, in answer to the hypothetical question propounded.

"To qualify one as an expert witness there must be some proof that he has some special knowledge of the subject about which he is called upon to express an opinion. The knowledge may come from experience in, or study of, the matter, but there must be something shown to justify the conclusion that he has some special knowledge to make his opinion of any value." *Van Ness v. New York and New Jersey Telephone Co.*, 49 *Vroom* 511; *Pennsylvania, New Jersey and New York Railroad Co. v. Schwarz*, 46 *Id.* 801.

As the witness in the present case was permitted to give an opinion on a subject of which she had no special knowledge, it was, under the cases above cited, an error injurious to the defendant.

The next harmful error is the admission of the opinion testimony of Mr. Owens, a civil engineer, in answer to a hypothetical question, based upon certain facts concerning the flow of a spring, called the "Meeker spring," which was not upon plaintiff's property, nor the basis of any part of the plaintiff's claim. The facts stated in the question assumed a fluctuating flow from the Meeker spring, and the witness was then asked: "With your knowledge just gained from hearing the record of the eight-hour pumping at the plant, would you or would you not assume that there was a direct connec-

tion between that happening and the pumping at East Orange pumping station?" To this the witness answered: "It would be conclusive evidence to me that there was a direct connection between the Meeker spring and the pumping station."

The effect of this answer upon the issue being tried, if it be material to that issue, was that the defendant, by the pumping complained of, had withdrawn the subterranean waters from the Meeker spring, and that the topographical conditions of the locality were such that proof of the abstraction of subterranean waters from the Meeker spring would have a tendency to prove a like result to the well and brook on the plaintiff's property. We have no doubt that this testimony was improperly admitted. The trial court held "that if a connection is established between the pumping, and a well similarly situated, a legitimate inference may be drawn as to the cause of the diminution of the Crosby water." We do not think this follows, because the diminution in the flow of water in the Meeker spring may have been due to very different causes, and it will be observed that the witness was not asked to what he would attribute the diminution of water in the Meeker spring, but whether, in his opinion, there was a connection between that and what happened at the pumping station.

But even if this was permissible it was not proper to allow the witness, under the facts shown in the case, to express an opinion that a connection existed between the Meeker spring and the pumping station as tending to show that such a connection existed between the plaintiff's spring and the pumping station, for that would involve the trial of the question whether the diminution in the Meeker spring was caused by the pumping, which the plaintiff claims affected his spring or wells, for the reason that the testimony could have no relation to the cause except to show that the pumping affected the plaintiff's property, because it had a like effect upon the Meeker spring, and that this was due to a supposed connection between the two.

For the reasons stated the judgment will be reversed.

*For affirmance*—None.

*For reversal*—The Chief Justice, Garrison, Swayze, Trenchard, Parker, Bergen, Minturn, Kalisch, Bogert, Vredenburgh, Congdon, White, Terhune, JJ.    13.